UNITED STATES DISTRICT COURT FILED

DISTRICT OF CONNECTICUT 2010 JUN 15 P 2: 27

Grand Jury N-09-3

U.S. DISTRICT COURT
NEW HAVEN, CT

UNITED STATES OF AMERICA

Criminal No. 3:10CR _____ (    )

v.

MAURIZIO LANCIA
DAVID KINNEY
STACEY PETRO
MICHAEL RUSSO
YUNIO GONZALEZ
MELISSA VALENTIN
MICHAEL HODGES
JANE SOULLIERE
ANGEL URENA
MARIA LOGAN

**VIOLATIONS:**

| | |
|---|---|
| 18 U.S.C. § 1349 | [Conspiracy] |
| 18 U.S.C. § 1341 | [Mail Fraud] |
| 18 U.S.C. § 1343 | [Wire Fraud] |
| 18 U.S.C. § 1001 | [Making a False Statement] |
| 18 U.S.C. § 2 | [Aiding and Abetting] |
| 18 U.S.C. § 981(a) | [Forfeiture] |
| 28 U.S.C. § 2461(c) | [Forfeiture] |

## INDICTMENT

The Grand Jury charges:

### COUNT ONE
(18 U.S.C. § 1349)
(Conspiracy)

At all times relevant to this Indictment:

#### The Defendants

1.      Defendant MAURIZIO LANCIA ("LANCIA") was a licensed attorney and licensed mortgage broker. LANCIA controlled and operated Royal Financial Services, LLC, and acted as a mortgage broker and closing agent in connection with various fraudulent real estate transactions.

2.      Defendant DAVID KINNEY ("KINNEY") was a licensed attorney with offices in New Haven, Connecticut. Kinney acted as an attorney and closing agent in connection with various fraudulent real estate transactions.

3.     Defendant STACEY PETRO ("PETRO") was a licensed mortgage broker. PETRO controlled and operated First Source Mortgage Solutions, Inc., and acted as a mortgage broker in connection with various fraudulent real estate transactions.

4.     Defendant MICHAEL RUSSO ("RUSSO") was, at certain times during the conspiracy, a licensed real estate sales person. RUSSO worked at Elizabeth Athan Realty and at Broad Street Investment Group. RUSSO sought out residential real estate properties ("Properties") to be bought and sold and recruited individuals to act as buyers in connection with various fraudulent real estate transactions.

5.     Defendant YUNIO GONZALEZ ("GONZALEZ") was the owner of IEK Professional Services, a bookkeeping and tax preparation service. GONZALEZ was also a licensed real estate sales person and worked at Elizabeth Athan Realty. GONZALEZ recruited a family member to act as a buyer in connection with a fraudulent real estate transaction and he himself acted as the seller in connection with the same fraudulent real estate transaction.

6.     Defendant MELISSA VALENTIN ("VALENTIN") worked at Elizabeth Athan Realty at certain times during the conspiracy. VALENTIN recruited family members to act as buyers in connection with fraudulent real estate transactions, and she herself acted as both a buyer and a seller in connection with various fraudulent real estate transactions.

7.     Defendant MICHAEL HODGES ("HODGES") worked at J.G. Property and Investment Management Company, and at Broad Street Investment Group at certain times during the conspiracy. HODGES sought out Properties to be purchased and sold and recruited individuals to act as buyers in connection with various fraudulent real estate transactions.

- 2 -

8.      Defendant JANE SOULLIERE ("SOULLIERE") recruited individuals to act as buyers and acted as a buyer herself in connection with various fraudulent real estate transactions.

9.      Defendant ANGEL URENA ("URENA") recruited individuals to act as buyers and acted as a buyer himself in connection with various fraudulent real estate transactions.

10.     Defendant MARIA LOGAN ("LOGAN") acted as a buyer in connection with various fraudulent real estate transactions.

Other Relevant Entities and Individuals

11.     Royal Financial Services, Inc. ("RFS" or "Royal") was a mortgage brokerage company with offices in Trumbull, Connecticut, that was licensed as a first and second mortgage brokerage company by the State of Connecticut Commissioner of Banking.  Royal also operated out of the property located at 349-351 Broad Street, New London.

12.     First Source Mortgage Solution ("FSMS") was a mortgage brokerage company with offices in Branford, Connecticut, that was licensed as a first and second mortgage brokerage company by the State of Connecticut Commissioner of Banking.  FSMS also operated out of the property located at 349-351 Broad Street, New London.

13.     Elizabeth Athan Realty ("Athan Realty") was a licensed real estate company licensed in the State of Connecticut with offices at 349-351 Broad Street, New London.  Athan Realty, which was operated by, among others, William Athan, not a defendant herein but charged elsewhere, served as the realtor and took commissions on various fraudulent real estate transactions.  At various times during the conspiracy, RUSSO, GONZALEZ, and VALENTIN each worked at Athan Realty at the Broad Street offices.

14.     Broad Street Investment Group ("BSIG" or "Broad Street") was an entity that

- 3 -

arranged the buying and selling of Properties and, in connection with the buying and selling of

Properties, arranged for individuals to obtain funding through Royal and FSMS from various

mortgage lending companies. Broad Street was organized, operated, and controlled by LANCIA,

Jose Guzman, and William Athan. Broad Street operated out of the property located at 349-351

Broad Street, New London.

15.     J.G. Property and Investment Management Company ("J.G. Management") was a

real estate property management company that operated out of the property located at 349-351

Broad Street, New London. J.G. Management was owned and operated by Jose Guzman, and

employed HODGES and various other co-conspirators.

16.     The Cutting Edge Contracting, Inc. ("the Cutting Edge") was a home

improvement contractor and landscaping company. The Cutting Edge had offices at 74 Pearl

Street, Norwich, and 264 Vauxhall Street, New London. The Cutting Edge had a number of

bank accounts at Citizen's Bank, a financial institution that is engaged in and the activities of

which affect interstate and foreign commerce. As described more fully below, the Cutting Edge

accounts were used in connection with financial transactions that facilitated the funding of

mortgages and furthered the conspiracy.

17.     IEK Professional Services ("IEK") was a bookkeeping and tax preparation

business. IEK was owned and operated by GONZALEZ, with offices at 92 Lincoln Avenue,

New London, and later at 308 Connecticut Avenue, New London. On at least one occasion IEK

provided a fraudulent letter in connection with a fraudulent real estate transaction.

18.     Jose Guzman, a co-conspirator not a defendant herein but charged elsewhere,

- 4 -

worked as a loan officer at Royal with LANCIA and at FSMS with PETRO. As a loan officer at both LANCIA's and PETRO's companies, Jose Guzman arranged for individuals to obtain funding from various mortgage companies. Jose Guzman also owned and operated J.G. Management and was one of LANCIA's partners in Broad Street.

19.     William Athan ("Athan"), a co-conspirator not a defendant herein but charged elsewhere, controlled the use of the license of Athan Realty and was one of LANCIA's partners in Broad Street. Athan acted as a buyer in connection with a number of fraudulent real estate transactions and provided monies in connection with various other fraudulent real estate transactions.

20.     Brian Guimond ("Guimond"), a co-conspirator not a defendant herein but charged elsewhere, owned and operated the Cutting Edge. Guimond used the Cutting Edge to provide false employment certifications in connection with various fraudulent real estate transactions and used the Cutting Edge bank accounts to negotiate checks issued at closings from attorney trust accounts.

21.     Isaura Guzman, a co-conspirator not a defendant herein but charged elsewhere, was a licensed real estate sales person. Isaura Guzman worked at Elizabeth Athan Realty, Broad Street, and J.G. Management. Isaura Guzman worked as a real estate agent, recruited individuals to act as buyers, and she herself acted as both a buyer and a seller in connection with various fraudulent real estate transactions.

22.     Rosa Garcia ("Garcia"), a co-conspirator not a defendant herein but charged

elsewhere, worked in various capacities at J.G. Management and Broad Street.  Garcia recruited individuals to act as buyers, and she herself acted as a buyer in connection with various fraudulent real estate transactions.

23.     Certain individuals, not charged in this Indictment, who acted as buyers and borrowers in connection with various fraudulent real estate transactions and whose identities are known to the Grand Jury, are referred to in this Indictment by their initials as: "R.A.," "D.C.," "B.G.," "R.G.," "J.G. Jr.," "I.G.," "C.Q.," "R.R.," "E.V.," and "M.V."  An attorney, not charged in this indictment, who acted as an attorney and settlement agent in connection with various fraudulent real estate transactions and whose identity is known to the Grand Jury, is referred to in this Indictment as "Attorney #2".

24.     KINNEY controlled accounts in the name of his law firm at Wachovia Bank, a federally insured financial institution the activities of which affected interstate and foreign commerce.  Attorney #2, controlled accounts at Liberty Bank, a federally insured financial institution the activities of which affected interstate and foreign commerce.

25.     LANCIA and PETRO, as mortgage brokers, working together and with others, arranged for various individuals including VALENTIN, SOULLIERE, URENA, LOGAN, "R.A.," "D.C.," "B.G.," "R.G.," "J.G. Jr.," "I.G.," "C.Q.," "R.R.," "E.V.," and "M.V.," and others known and unknown to the Grand Jury, to obtain funding from various mortgage companies and mortgage originators in connection with various fraudulent real estate transactions.  The individuals who acted as buyers and who, in that role, borrowed funds in their names from various mortgage lenders are referred to herein as "Borrowers."

- 6 -

## The Lenders

26.     The various mortgage lenders that provided funds to the Borrowers included: Accredited Home Lenders, Inc. ("Accredited"), a mortgage lender with its principal place of business in San Diego, California;  America's Wholesale Lender d/b/a Countrywide Home Lenders, Inc. ("Countrywide"), a mortgage lender with its principal place of business in Calabasas, California;  Argent Mortgage Company, LLC ("Argent"), a mortgage lender with its principal place of business in Irvine, California;  BNC Mortgage, Inc. ("BNCM"), a mortgage lender with its principal place of business in Irvine, California;  Fremont Investment and Loan ("Fremont"), a mortgage lender with its principal place of business in Brea, California;  Nation One Mortgage Co., Inc. ("Nation One"), a mortgage lender with its principal place of business in Norwell, Massachusetts; New Century Mortgage Corporation ("New Century"), a mortgage lender with its principal place of business in Irvine, California; The New York Mortgage Company LLC ("New York Mortgage"), a mortgage lender with its principal place of business in New York, New York; Option One Mortgage Corporation ("Option One"), a mortgage lender with its principal place of business in Irvine, California; Wilmington Finance, Inc. ("Wilmington"), a mortgage lender with its principal place of business in Plymouth Meeting, Pennsylvania;  and WMC Mortgage ("WMC"), a mortgage lender with its principal place of business in Burbank, California.  These entities are referred to collectively herein as "Lenders."

## The Conspiracy

27.     Beginning in or about January 2004 and continuing until in or about June 2007, in

the District of Connecticut, and elsewhere,

> MAURIZIO LANCIA
> DAVID KINNEY
> STACEY PETRO
> MICHAEL RUSSO
> YUNIO GONZALEZ
> MELISSA VALENTIN
> MICHAEL HODGES
> JANE SOULLIERE
> ANGEL URENA
> MARIA LOGAN

the defendants herein, together with co-conspirators Jose Guzman, William Athan, Brian

Guimond, Isaura Guzman, Rosa Garcia,  and others, known and unknown to the Grand Jury, did

knowingly combine, conspire, confederate, and agree together and with each other, to commit

offenses against the United States as follows:

a.     to devise and intend to devise a scheme and artifice to defraud and to obtain

money and property by means of materially false and fraudulent pretenses,

representations, and promises, and for the purpose of executing and attempting to

execute the scheme and artifice did knowingly deposit and caused to be deposited

items to be sent and delivered by U.S. Mail and by private and commercial

interstate carrier, in violation of 18 U.S.C. § 1341; and

b.     to devise and intend to devise a scheme and artifice to defraud and to obtain

money and property by means of materially false and fraudulent pretenses,

representations, and promises and for the purpose of executing and attempting to

execute the scheme and artifice did knowingly transmit, and cause to be

- 8 -

transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals and sounds, in violation of 18 U.S.C. § 1343.

### The Purpose of the Conspiracy

28.     The purpose of the conspiracy was for the above captioned defendants, their co-conspirators, and others, known and unknown to the Grand Jury, to enrich themselves and their companies by arranging for individuals to act as buyers and Borrowers and to purchase Properties, by securing the funding for the mortgages for the Properties from various Lenders based on materially false and fraudulent representations, and by taking substantial commissions, fees, and other monies for their own use and benefit out of the funding provided by the Lenders.

### The Manner and Means of the Conspiracy

29.     It was part of the conspiracy that co-conspirators LANCIA, Jose Guzman, and Athan would and did form Broad Street for the purpose of buying and selling of Properties.

30.     It was further part of the conspiracy that co-conspirators LANCIA, Jose Guzman, and Athan would and did purchase the property located at 349-351 Broad Street, New London, and would and did operate Royal, BSIG, J.G. Management, and Athan Realty out of that location.

31.     It was further part of the conspiracy that co-conspirators LANCIA, KINNEY, PETRO, Athan, Jose Guzman, and others would and did use their professional licenses, experience, and extensive personal contacts to arrange for Borrowers to obtain funding from Lenders based on materially false and fraudulent representations and would and did arrange for the Borrowers to purchase numerous Properties, thus generating substantial commissions, fees, and profit for the conspirators.

32.     It was further part of the conspiracy that, in order to recruit and entice the

- 9 -

individuals to act as Borrowers, co-conspirator Jose Guzman would and did compensate them and cause them to be compensated in connection with the purchase of Properties.

33.     It was further part of the conspiracy that co-conspirators RUSSO, GONZALEZ, HODGES, and VALENTIN would and did recruit Borrowers, typically individuals who had good credit but were of modest means with low levels of income, and arrange for them to act as buyers, knowing the Borrowers would be paid to do so.

34.     It was further part of the conspiracy that co-conspirators HODGES, Jose Guzman, and others would and did locate Properties to be purchased by the Borrowers using funds fraudulently obtained from Lenders.

35.     It was further part of the conspiracy that in order to secure the funding from the Lenders, co-conspirators LANCIA, KINNEY, PETRO, GONZALEZ, Jose Guzman, Isaura Guzman, and others would and did falsify and cause to be falsified certain material information on the Borrowers' mortgage loan applications and supporting documentation, including income, assets, employment history, rent history, and the Borrowers' intentions to make the Properties their primary residencies.

36.     It was further part of the conspiracy that in order to secure the funding from the Lenders, co-conspirators LANCIA, PETRO, GONZALEZ, VALENTIN, SOULLIERE, URENA, LOGAN, and others would and did knowingly sign mortgage loan applications and supporting documents that contained materially false and fraudulent representations.

37.     It was further part of the conspiracy that co-conspirators KINNEY, as settlement agent, and VALENTIN, URENA, Athan, and others, as Borrowers, would and did sign materially false HUD-1 settlement statements that falsely represented, among other things, that

- 10 -

the Borrowers were making down payments when in truth and in fact the funds used for the down payments listed on the HUD-1 were not from the Borrowers' own funds.

38.    It was further part of the conspiracy that co-conspirator KINNEY, as settlement agent, and VALENTIN, URENA, Athan, and others, as Borrowers, would and did sign materially false HUD-1 settlement statements that falsely represented that money was going to the Cutting Edge for work on the Properties, when in truth and in fact the amount of money listed on the HUD-1 purportedly for property improvements was not due to the Cutting Edge.

39.    It was further part of the conspiracy that co-conspirators would and did work for and participate in the business dealings of the above referenced real estate related businesses and would and did buy and sell Properties, conduct real estate closings, and prepare and submit materially false and fraudulent documentation to the Lenders by means of interstate wires, the U.S. Mails, and commercial interstate carriers.

40.    It was further part of the conspiracy that co-conspirators would and did cause the Lenders to wire funds by interstate wire, based on materially false and fraudulent representations, to an account controlled by KINNEY at Wachovia Bank and to an account controlled by Attorney #2 at Liberty Bank.

41.    It was further part of the conspiracy that co-conspirators LANCIA, KINNEY, PETRO, and others would and did collect commissions and fees in connection with the closings of the real estate transactions that had been executed based on materially false and fraudulent representations.

42.    It was further part of the conspiracy that co-conspirators would and did falsify closing records, including submitting false work invoices from the Cutting Edge on certain transactions, and on such transactions, would and did cause checks to be issued made payable to

- 11 -

the Cutting Edge from funds provided by the Lenders, purportedly to pay for work done on the Properties, when in truth and in fact such work, as represented to the Lenders, had not been done.

43.     It was further part of the conspiracy that for the real estate transactions in which false work invoices from the Cutting Edge were submitted to the Lenders, KINNEY would and did cause checks to be issued at the closing made payable to the Cutting Edge from funds provided by the Lenders knowing the work, as represented to the Lenders, had not been done.

44.     It was further part of the conspiracy that on certain transactions, Guimond and other co-conspirators, would and did take checks that had been issued by KINNEY at the closing payable to the Cutting Edge, and use funds from the checks to purchase cashier's checks, and then take the cashier's checks back to KINNEY for use as the Borrowers' down payments.

45.     It was further part of the conspiracy that on certain transactions, KINNEY would and did accept cashier's checks as down payments after closing checks had already been issued, and in doing so accepted checks that were not from the Borrowers' own funds, thereby falsely representing to the Lenders that the funds used as the down payment were those of the Borrowers.

46.     It was further part of the conspiracy that co-conspirators would and did cause over one hundred mortgages to be funded based on materially false and fraudulent representations that had been communicated to the Lenders by interstate wire, U.S. Mail and interstate commercial carrier.

### Overt Acts

47. In furtherance of the conspiracy and to effect the objects of the conspiracy, defendants LANCIA, KINNEY, PETRO, RUSSO, GONZALEZ, VALENTIN, HODGES, SOULLIERE, URENA, and LOGAN and their co-conspirators Jose Guzman, Athan, Guimond, Isaura Guzman, Garcia, and others known and unknown to the Grand Jury, committed and caused to be committed the following overt acts, among others, in the District of Connecticut and elsewhere:

A. In or about January 2004, LANCIA, Jose Guzman and Athan met at a casino in Eastern Connecticut and discussed forming a partnership to buy and sell residential real estate.

B. In or about January or February 2004, LANCIA, Jose Guzman, and Athan agreed to form a company, eventually called Broad Street Investment Group, and agreed to serve and did serve as that entity's principals.

C. On or about November 15, 2004, LANCIA, Jose Guzman, and Athan purchased the property located at 349-351 Broad Street, New London, Connecticut, in the name of Broad Street and agreed to use and did use the location to conduct the business of their venture, including the business of Royal, Broad Street, J.G. Management, and Athan Realty.

D. On or about May 26, 2005, in connection with the purchase of 33 Lee Avenue, New London, for which Borrower "M.V." acted as buyer and Borrower:

    i. Borrower "M.V." signed a residential loan application falsely stating she had worked at the Cutting Edge for 3.4 years as a cleaning supervisor, falsely stating she earned $3,900 per month, and falsely stating that LANCIA had taken the information in a face to face interview.

ii.     Borrower "M.V." signed a false HUD-1 settlement statement reflecting the fact that LANCIA made a loan origination fee of approximately $4,860 and a premium yield adjustment of approximately $4,860.

E.     On or about August 16, 2005, in connection with the purchase of 121 Hempstead Street, New London, for which Borrower "M.V." acted as buyer and Borrower:

i.     Borrower "M.V." signed a residential loan application falsely stating she had worked at the Cutting Edge for 3.3 years as a cleaning supervisor, falsely stating she earned $5,329 per month, and falsely stating that LANCIA had taken the information in a face to face interview.

ii.     Guimond of Cutting Edge signed a false verification of employment, falsely stating Borrower "M.V." was a manager and that the probability of her continued employment was "excellent."

iii.     Borrower "M.V." signed a false HUD-1 settlement statement reflecting the fact that LANCIA made a loan origination fee of $6,912 and a legal fee of $1,500.

F.     On or about August 18, 2005, in connection with the purchase of 193 Summit Street, Norwich, for which VALENTIN, acted as buyer and Borrower purchased the Property from co-conspirator Isaura Guzman:

i.     VALENTIN signed a residential loan application falsely stating she had worked at the Cutting Edge for 4 years as an administrative assistant, falsely stating she earned $3,500 per month, and falsely stating that Jose Guzman had taken the information in a face to face interview.

ii.     VALENTIN and Isaura Guzman signed a false HUD-1 settlement statement reflecting the fact that LANCIA made a loan origination fee of $2,720 and a closing fee of $675.

G.     On or about August 26, 2005, in connection with the purchase of 44 Garfield Avenue, New London, for which co-conspirator Isaura Guzman acted as buyer and Borrower:

    i.       Co-conspirator Isaura Guzman signed a false HUD-1 settlement statement that falsely represented that she was paying over $20,500 as a down payment when in fact she was not contributing that amount.

    ii.      Co-conspirator Isaura Guzman signed a loan application falsely stating she had an income of over $13,000 and falsely stating that LANCIA had taken the information in a face to face interview.

H.    On or about December 29, 2005, in connection with the purchase of 47-49

Mountain Avenue, New London, for which Borrower "J.G. Jr." acted as a buyer

and Borrower:

    i.       LANCIA, acting in the capacity of an attorney, wrote a letter to Attorney #2, dated December 28, 2005 in which he indicated, among other things, that he represented the seller of the property.

    ii.      Borrower "J.G. Jr." signed a residential loan application falsely stating he had worked at the Cutting Edge for 3 years in "sales," falsely stating he earned $6,500 per month, and falsely stating that PETRO had taken the information by telephone.

    iii.    PETRO signed the false residential loan application.

    iv.    PETRO and Guimond signed a false verification of employment (dated 12/16/05) falsely stating that Borrower "J.G. Jr." was an office manager and that the probability of his continued employment was "good."

I.    On or about February 9, 2006, in connection with the purchase of 10 Thompson

Court, New London, for which Borrower "J.G. Jr." acted as a buyer and

Borrower:

    i.       Borrower "J.G. Jr." signed a residential loan application falsely stating that he worked at the Cutting Edge for 2 years and 1 month as a landscaping maintenance supervisor and falsely stating he earned $6,200 per month.

    ii.      LANCIA signed the false residential loan application.

    iii.   GONZALEZ signed a letter from IEK Professional Services falsely stating that Borrower "J.G. Jr." had been employed at the Cutting Edge for 2 years and 1 month as a landscaping maintenance supervisor.

      iv.     GONZALEZ made materially false statements to Argent in response to a prefunding auditors verification of self employment and falsely stated that he had been preparing taxes for Borrower "J.G. Jr." for at least 3 years.

J.     On or about February 7, 2006, in connection with the purchase of 483 East Main

Street, New London, for which Borrower "E.V." acted as a buyer and Borrower:

      i.     Jose Guzman signed a false residential loan application falsely stating that Borrower "E.V." worked at the Cutting Edge for 2.4 years as a bookkeeper/clerk, falsely stating she earned \$3,200 per month, and falsely stating that Jose Guzman had taken the information in a face to face interview.

      ii.    Jose Guzman and LANCIA signed the warranty deed.

      iii.   Guimond signed a false verification of employment, falsely stating that Borrower "E.V. " was a "Bookeeper" (*sic*) and that the probability of her continued employment was "very good."

K.     On or about April 10, 2006, in connection with the purchase of 93 Lincoln

Avenue, New London, for which LOGAN acted as buyer and Borrower and

purchased the Property from Jose Guzman, with LANCIA acting as mortgage

broker:

      i.     LOGAN signed a residential loan application falsely stating that she worked at the Cutting Edge for 2.1 years as a bookkeeper and falsely stating that LANCIA had taken the information by telephone.

      ii.    LANCIA signed the false residential loan application.

      iii.   LOGAN and Jose Guzman signed a false HUD-1 settlement statement reflecting the fact that LANCIA made a loan origination fee of \$4,624, a yield spread premium of approximately \$5,662, and a closing fee of \$675.

L.     On or about May 4, 2006, in connection with the purchase of 115 Riverview

Avenue, New London, for which Borrower "R.A.," who HODGES had recruited,

acted as buyer and Borrower:

i.      Borrower "R.A." signed a false residential loan application falsely stating that she worked at J.G. Management for 3 years and 2 months as a "property manage[r]" and falsely stating she earn $4,781 per month.

ii.      PETRO and Jose Guzman signed a false verification of Employment, falsely stating Borrower "R.A." was a property manager and that the probability of her continued employment was "excellent."

iii.      Borrower "R.A." and KINNEY signed a false HUD-1 settlement statement (dated 4/21/2006) reflecting the fact that PETRO made a loan origination fee of $3,750 and a premium paid by Lender of $1,875.

iv.      HODGES and Borrower "R.A." participated in the preparation of a fraudulent "Gift Letter" that falsely stated the mother of Borrower "R.A." had given or will give $3,200 as a gift to Borrower "R.A." towards the purchase of the Property.

M.      On or about May 12, 2006, in connection with the purchase of 207 Connecticut Avenue, New London, for which LOGAN acted as buyer and Borrower, and for which LANCIA represented the seller:

i.      LOGAN signed a false residential loan application falsely stating that she worked at the Cutting Edge for 2 years 4 months as a clerical employee, falsely stating she earning $4,500 per month, and falsely stating that LANCIA had taken the information by telephone.

ii.      LANCIA signed the warranty deed.

iii.      LOGAN and Jose Guzman signed a false HUD-1 settlement statement reflecting the fact that LANCIA made a loan origination fee of $3,456 and a closing fee of $675.

N.      On or about June 15, 2006, GONZALEZ sold 34 Montauk Avenue, New London, to Borrower "I.G." who acted as buyer and Borrower.

O.      On or about June 15, 2006, in connection with the purchase of 34 Montauk Avenue, New London, for which Borrower "I.G." acted as a buyer and Borrower:

i.      Borrower "I.G." signed a residential loan application falsely stating that he worked at the Cutting Edge for 2 years as a contractor, falsely stating he

- 17 -

earned $5200 per month, and falsely stating that PETRO had taken the information in a face to face interview.

ii.    PETRO signed the false residential loan application.

iii.    KINNEY, GONZALEZ, and Jose Guzman signed the open-end mortgage deed.

iv.    KINNEY and GONZALEZ signed the HUD-1 settlement statement reflecting the fact that PETRO made a processing fee of $4,480 and a yield spread premium of approximately $2,240.

P.    On or about June 29, 2006, in connection with the purchase of 47 Blackhall

Street, New London, for which VALENTIN acted as a buyer and Borrower:

i.    VALENTIN and signed a residential loan application falsely stating that she worked at the Cutting Edge for 4 years as an administrative assistant, falsely stating she earned $4,500 per month, and falsely stating that PETRO had taken the information in a face to face interview.

ii.    PETRO signed the false residential loan application.

iii.    VALENTIN signed a false income certification falsely stating that she had a gross monthly income of $5,587.

iv.    KINNEY and VALENTIN signed a false HUD-1 settlement statement reflecting the fact that PETRO made a processing fee of $1,025 and yield spread premium of $1,980.

Q.    On or about June 29, 2006, in connection with the purchase of 206 Jefferson

Avenue, New London, for which SOULLIERE acted as a buyer and Borrower:

i.    SOULLIERE signed a residential loan application falsely stating that she intended to occupy the Property as her primary residence and stating that PETRO had taken the information by telephone.

ii.    PETRO signed the false residential loan application.

iii.    KINNEY and SOULLIERE signed a false HUD-1 settlement statement that falsely represented that SOULLIERE provided the money for a down payment of $12,709.83 from her own funds and reflecting the fact that

- 18 -

> PETRO made a loan origination fee of $4,940 and yield spread premium of $3,705.

R.  On or about June 30, 2006, in connection with the purchase of 125 McKinley

Avenue, Norwich, for which SOULLIERE acted as a buyer and Borrower:

  i.  SOULLIERE signed a residential loan application falsely stating that she intended to occupy the Property as her primary residence and stating that PETRO had taken the information by telephone.

  ii.  PETRO signed the false residential loan application.

  iii.  KINNEY and SOULLIERE signed a false HUD-1 settlement statement reflecting the fact that PETRO made a processing fee of $525 and yield spread premium of $2,360.

S.  On or about August 17, 2006, in connection with the purchase of 47 Blackhall

Street, New London, for which LOGAN, acted as buyer and Borrower and

purchased the Property from co-conspirator VALENTIN:

  i.  LOGAN signed a residential loan application falsely stating that she had worked at the Cutting Edge for 3 years a bookkeeper, falsely stating she earned $7,250 per month, and falsely stating that PETRO had taken the information in a telephone interview.

  ii.  PETRO signed the false residential loan application.

T.  On or about August 24, 2006, in connection with the purchase of 51-53 Mountain

Avenue, New London, for which VALENTIN acted as buyer and Borrower:

  i.  VALENTIN signed a false residential loan application falsely stating that she had worked at the Cutting Edge as an administrative assistant for 4 years, falsely stating she had a base employment income of $4,500 per month, and falsely stating that PETRO had taken the information in a face to face interview.

  ii.  PETRO signed the false residential loan application.

  iii.  VALENTIN signed an income certification falsely representing her gross monthly income to be $7,740.

- 19 -

      iv.     KINNEY and VALENTIN signed a false HUD-1 settlement statement falsely representing that VALENTIN provided money for a down payment of $28,853.75 from her own funds, and falsely indicating that the Cutting Edge was to receive $25,000 for work on the property. The HUD-1 that KINNEY and VALENTIN signed also reflected the fact that PETRO made a loan origination fee of $4,770 and yield spread premium of approximately $2,385.

U.     On or about September 27, 2006, in connection with the purchase of 29 Division Street, Norwich, for which LOGAN acted as buyer and Borrower:

      i.     LOGAN signed a false residential loan application falsely stating that she had worked at the Cutting Edge for 3 years as a bookkeeper, falsely stating she earned $7,250 per month, and falsely stating PETRO had taken the information by telephone.

      ii.     PETRO signed the false residential loan application.

      iii.     LOGAN signed a false HUD-1 settlement statement reflecting the fact that PETRO made a loan origination fee of $5,680 and yield spread premium of $5,680.

V.     In or about September 2006, SOULLIERE told her neighbor, Borrower "C.Q.," that he could make some money by allowing Jose Guzman to buy houses using "C.Q.'s" credit, and told him that she had purchased houses herself with Jose Guzman and that Jose Guzman had paid her for doing so.

W.     On or about September 29, 2006, in connection with the purchase of 278 Harland Road, Norwich, for which Borrower "C.Q.," whom SOULLIERE had recruited, acted as a buyer and Borrower:

      i.     Borrower "C.Q." signed a false residential loan application falsely stating that his income was above what he actually made and falsely stating that PETRO had taken the information in face to face interview.

      ii.     KINNEY and Borrower "C.Q." signed a false HUD-1 settlement statement reflecting the fact that PETRO made a loan origination fee of $5,040 and yield spread premium of approximately $5,040.

X.     On or about October 25, 2006, in connection with the purchase of 18 Hope Street,

New London, for which Borrower "C.Q.," whom SOULLIERE had recruited,

acted as a buyer and Borrower:

  i.    Borrower "C.Q." signed a false residential loan application falsely stating
        his income was $11,500 per month and falsely stating that PETRO had
        taken the information by telephone.

  ii.   PETRO signed the residential loan application.

  iii.  KINNEY and Borrower "C.Q." signed a false HUD-1 settlement statement
        reflecting the fact that PETRO made a loan origination fee of $5,795 and
        yield spread premium of $5,795.

Y.     On or about November 16, 2006, in connection with the purchase of 18 Mountain

Avenue, New London, for which Borrower "C.Q.," whom SOULLIERE had

recruited, acted as a buyer and Borrower:

  i.    Borrower "C.Q." signed a false residential loan application falsely stating
        that his base employment income was $11,500 per month and falsely
        stating that PETRO had taken the information by telephone.

  ii.   PETRO signed the residential loan application.

  iii.  KINNEY and Borrower "C.Q." signed a false HUD-1 settlement statement
        reflecting the fact that PETRO made a loan origination fee of $5,490.

Z.     On or about November 16, 2006, in connection with the purchase of 54

Hempstead Avenue, New London, for which Borrower "C.Q.," whom

SOULLIERE had recruited, acted as a buyer and Borrower:

  i.    Borrower "C.Q." signed a false residential loan application falsely stating
        that his base employment income was $11,500 per month and falsely
        stating that PETRO had taken the information by telephone.

  ii.   PETRO signed the false residential loan application.

- 21 -

     iii.     KINNEY and Borrower "C.Q." signed a false HUD-1 settlement statement that falsely represented that Borrower "C.Q." provided the money for a down payment of $29,813.85 and reflecting the fact that PETRO made a yield spread premium of approximately $5,490.

AA.    On or about November 16, 2006, in connection with the purchase of 309 Broad

Street, New London, for which Borrower "D.C.," whom RUSSO had recruited,

acted as a buyer and Borrower:

     i.     Borrower "D.C." signed a false residential loan application falsely stating that his base employment income was $23,000 per month and falsely stating that PETRO had taken the information by telephone.

     ii.     PETRO signed the false residential loan application.

     iii.     KINNEY and Borrower "D.C." signed a false HUD-1 settlement statement reflecting the fact that $15,000 was going to the Cutting Edge and PETRO made a loan origination fee of $5,795.

     iv.     KINNEY issued check no. 39368 for $15,000 to the Cutting Edge.

BB.    On or about November 30, 2006, in connection with the purchase of 39 Summer

Street, New London, for which Borrower "D.C.," whom RUSSO had recruited,

acted as a buyer and Borrower:

     i.     Borrower "D.C." signed a false residential loan application falsely stating that he intended to occupy the property as his primary residence and falsely stating that PETRO had taken the information by telephone.

     ii.     KINNEY and Borrower "D.C." signed a false affidavit of occupancy falsely stating that Borrower "D.C." intended to occupy the property as his primary residence.

     iii.     KINNEY and Borrower "D.C." signed a false HUD-1 settlement statement reflecting the fact that PETRO made a loan origination fee of $4,720 and an above par premium of $2,301.

     iv.     Guimond prepared and submitted a false invoice for $25,000.

     v.     KINNEY issued check no. 39429 for $26,150 to the Cutting Edge.

CC.     On or about November 30, 2006, in connection with the purchase of 852 Bank

Street, New London, for which Borrower "R.R.," whom RUSSO had recruited,

acted as a buyer and Borrower:

- i.     Borrower "R.R." signed a false residential loan application falsely stating that he intended to occupy the property as his primary residence.

- ii.     KINNEY and Borrower "R.R." signed a false HUD-1 settlement statement, reflecting the fact that $30,000 was going to the Cutting Edge and reflecting the fact that PETRO made a loan origination fee of $5,200 and an above par premium of $2,301.

- iii.     KINNEY issued check no. 39506 for $30,000 to the Cutting Edge.

DD.     On or about December 12, 2006, Kinney drafted, or caused to be drafted, a letter

addressed to Accredited stating that the property located at 852 Bank Street, New

London, "is no longer occupied" by Borrower "R.R."

EE.     On or about December 12, 2006, in connection with the purchase of 49 Lower

Boulevard, New London, for which Borrower "R.R.," whom RUSSO had

recruited, acted as a buyer and Borrower:

- i.     Borrower "R.R." signed a false residential loan application falsely stating that he intended to occupy the property as his primary residence, falsely stating that his base employment income was $13,800 per month, and falsely stating that his total income was $15,150 per month.

- ii.     Borrower "R.R." signed an income certification falsely stating that his gross monthly income was $15,150.

- iii.     KINNEY and Borrower "R.R." signed a false occupancy affidavit and financial status document falsely stating that Borrower "R.R." would occupy the Property and that his loan application reflected his then current financial position.

- iv.     KINNEY and Borrower "R.R." signed a false HUD-1 settlement statement, reflecting the fact that $33,000 was going to the Cutting Edge

- 23 -

and reflecting the fact that PETRO made a loan origination fee of $7,182 and a yield spread premium of $7,182.

FF.    On or about December 13, 2006, Kinney drafted, or caused to be drafted, a letter

addressed to New Century stating that the property located at 49 Lower

Boulevard, New London, "is no longer occupied" by Borrower "R.R."

GG.    On or about December 13, 2006, in connection with the purchase of 2 Hayes

Street, Waterford, for which Borrower "R.R.," whom RUSSO had recruited, acted

as a buyer and Borrower:

    i.    Borrower "R.R." signed a false residential loan application falsely stating that he intended to occupy the property as his primary residence, falsely stating that his base employment income was $8,900 per month, and falsely stating that PETRO had taken the information by telephone.

    ii.    Borrower "R.R." signed a false HUD-1 settlement statement, reflecting the fact that $15,000 was going to the Cutting Edge and reflecting the fact that PETRO made a broker fee of $7,500 and broker compensation paid by lender of $7,500.

    iii.    KINNEY issued or caused to be issued check no. 39699 for $15,000 to the Cutting Edge.

HH.    On or about December 20, 2006, in connection with the purchase of 44 Garfield

Avenue, New London, which Isaura Guzman sold to Borrower "M.C.," and for

which Borrower "M.C." acted as a buyer and Borrower:

    i.    Borrower "M.C." signed a false residential loan application falsely stating that he had worked at the Cutting Edge as a labor worker for 3 years, falsely stating that he had a base employment income of $6,800 per month, and falsely stating that PETRO had taken the information by telephone.

    ii.    PETRO signed the false residential loan application.

    iii.    Borrower "M.C." signed a false income certification falsely representing his gross monthly income to be $7,850.

    iv.    KINNEY, Isaura Guzman, and Borrower "M.C." signed a false HUD-1 settlement statement reflecting the fact that Isaura Guzman was receiving $16,208.81 and reflecting the fact that PETRO made a loan origination fee of $2,280.

II.    On or about January 12, 2007, in connection with the purchase of 51-53 Mountain

Avenue, New London, which VALENTIN sold to URENA, and for which

URENA acted as buyer and Borrower:

    i.    URENA signed a false residential loan application falsely stating that he intended to occupy the property as his primary residence, falsely stating that his base employment income was $6,800 per month and his total gross monthly income was $9,775, and falsely stating that PETRO had taken the information by telephone.

    ii.    PETRO signed the false residential loan application (dated Jan 11, 2007).

    iii.    URENA signed an income certification falsely stating his gross monthly income to be $9,775.

    iv.    KINNEY, VALENTIN, and URENA signed a false HUD-1 settlement statement that falsely represented that URENA provided the money for a down payment of $18,231.17 from his own funds and also reflecting the fact that PETRO made a loan origination fee of $6,422 and a yield spread premium of $6,422.

JJ.    On or about February 2, 2007, in connection with the purchase of 59 Coit Street,

New London, for which URENA acted as buyer and Borrower:

    i.    URENA signed a false residential loan application falsely stating that he intended to occupy the property as his primary residence, falsely stating that his base employment income was $6,800 per month and his total gross monthly income was $7,506.81 per month, and falsely stating that PETRO had taken the information by telephone.

    ii.    PETRO signed the false residential loan application (dated Feb. 1, 2007).

    iii.    URENA signed an income certification falsely stating that his gross monthly income was at least $7,326.13.

    iv.     URENA and KINNEY signed a false HUD-1 settlement statement that falsely represented that URENA provided the money for a down payment of $17,633.62 from his own funds, reflecting the fact that $30,000 was going to the Cutting Edge, and reflecting the fact that PETRO made a loan origination fee of $5,605 and a yield spread premium of $5,605.

    v.     KINNEY issued Check no. 40352 for $30,000 to the Cutting Edge.

KK.    On or about February 23, 2007, in connection with the purchase of 31Grand

Street, New London, for which Borrower "B.G." acted as buyer and Borrower:

    i.     Borrower "B.G." signed a false residential loan application falsely stating that he intended to occupy the property as his primary residence, falsely stating that his base employment income was $9,850 per month and his total gross monthly income was $11,831, and falsely stating that PETRO had taken the information by telephone.

    ii.     PETRO signed the false residential loan application (dated Feb. 22, 2007).

    iii.     KINNEY signed a false HUD-1 settlement statement that falsely represented that Borrower "B.G." provided the money for a down payment of $7,726.30 from his own funds, reflecting the fact that $20,000 was going to the Cutting Edge, and reflecting the fact that PETRO made a loan origination fee of $4,940 and a yield spread premium of $4,940.

    iv.     KINNEY issued check no. 40647 for $20,000 to the Cutting Edge.

LL.    On or about March 27, 2007, in connection with the purchase of 38 Coit Street,

New London, for which Athan acted as buyer and Borrower:

    i.     KINNEY and Athan and signed a false HUD-1 settlement statement that falsely represented that Athan provided the money for a down payment of $35,830 from his own funds, reflecting the fact that $49,100 was going to the Cutting Edge, and reflecting the fact that PETRO made a mortgage broker fee of $5,310 and a yield spread premium of $5,310.

    ii.     KINNEY, Jose Guzman, and Athan signed the mortgage agreement.

    iii.     KINNEY and Athan signed a document captioned: "Instructions to Closing Agent," with the sub-heading "Fraud Alert."

    iv.     KINNEY issued check no. 41071 for $49,100 to the Cutting Edge.

MM.  On or about March 27, 2007, in connection with the purchase of 33-35 Prest

Street, New London, for which Athan acted in the role of a Buyer and Borrower:

i.  KINNEY and Athan signed a false HUD-1 settlement statement that
falsely represented that Athan provided the money for a down payment of
$33,751 from his own funds, reflecting the fact that $54,000 was going to
the Cutting Edge, and reflecting the fact that PETRO made a mortgage
broker fee of $4,950 and a yield spread premium of $4,950.

ii.  KINNEY issued check no. 41088 for $54,000 to the Cutting Edge.

iii.  KINNEY sent or caused to be sent executed loan documents by interstate
commercial carrier from Connecticut to Option One, East Providence, R.I.

iv.  KINNEY caused Option One to transfer approximately $251,101 to an
attorney trust account at Wachovia Bank, New Haven, Connecticut by
interstate wire.

NN.  On or about March 27, 2007, Guimond deposited check no. 41071 in the amount

of $49,100 and check no. 41088 in the amount of $54,000, both issued by

KINNEY, into the Cutting Edge bank account ending in "9878" at Citizen's Bank.

OO.  On or about March 27, 2007, Guimond used the proceeds from check no. 41071

together with proceeds from check no. 41088 to purchase two (2) official

Citizen's Bank checks made payable to KINNEY, one ending in "137-2" in the

amount of $33,751 and one ending in "138-0" in the amount of $35,830.

PP.  On or about March 30, 2007, KINNEY deposited the official check ending in

"138-0" in the amount of $35,830 into his attorney trust account at Wachovia

Bank ending in "6997," falsely representing it to be Athan's down payment in the

38 Coit Street, New London transaction, when in truth and in fact the funds had

not been provided by Athan.

QQ. On or about March 30, 2007, KINNEY deposited the official check ending in "137-2" in the amount of $33,751 into his attorney trust account at Wachovia Bank ending in "6997," falsely representing it to be Athan's down payment in the 33-35 Prest Street, New London transaction, when in truth and in fact the funds had not been provided by Athan.

RR. On or about April 5, 2007, in connection with the purchase of 99 Furnace Street, Killingly, for which URENA acted as buyer and Borrower:

    i.    URENA signed a false residential loan application falsely stating that he intended to occupy the property as his primary residence and stating that PETRO had taken the information by telephone.

    ii.    URENA and KINNEY signed a false HUD-1 settlement statement that falsely represented that URENA provided the money for a down payment of $23,248 from his own funds, reflecting the fact that $10,000 was going to the Cutting Edge, and reflecting the fact that PETRO made a broker loan origination fee of $4,050 and a yield spread premium of $3,796.

SS. On or about April 16, 2007, in connection with the purchase of 15 Rosemary Street, New London, for which Borrower "B.G.," whom RUSSO had recruited, acted as buyer and Borrower:

    i.    Borrower "B.G." signed a false residential loan application falsely stating that his gross income was $12,923 per month, and falsely stating that PETRO had taken the information by telephone.

    ii.    PETRO signed the false residential loan application (dated Apr. 12, 2007).

    iii.    KINNEY signed a false HUD-1 settlement statement that falsely represented that Borrower "B.G." provided the money for a down payment of $31,739 from his own funds, reflecting the fact that $40,000 was going to the Cutting Edge, and reflecting the fact that PETRO made a broker fee of $4,500 and "broker comp." of $2,250.

    iv.    KINNEY issued check no. 41370 for $40,000 to the Cutting Edge.

TT.   On or about April 30, 2007, in connection with the purchase of 25 West Coit

Street, New London, for which Borrower "R.G.," acted as buyer and Borrower:

   i.    Borrower "R.G." signed a false residential loan application falsely stating
         that his total gross monthly income was $6,902 per month, and that
         PETRO had taken the information by telephone.

   ii.   PETRO signed the false residential loan application.

   iii.  KINNEY signed a false HUD-1 settlement statement that falsely
         represented that Borrower "R.G." provided the money for a down payment
         of $43,730 from his own funds, reflecting the fact that $90,000 was going
         to the Cutting Edge, and reflecting the fact that PETRO made a broker fee
         of $4,845 and "broker fee pd. by lender" of $4,845.

   iv.   KINNEY issued check no. 41561 for $90,000 to the Cutting Edge.

UU.   On or about April 30, 2007, Guimond deposited check no. 41561 in the amount of

$90,000 issued by KINNEY into the Cutting Edge bank account ending in "9878"

at Citizen's Bank.

VV.   On or about April 30, 2007, Guimond used the proceeds from check no. 41561 to

purchase five (5) official Citizen's Bank checks, including one made payable to

KINNEY ending in "824-0" in the amount of $48,730.03.

WW.   On or about April 30, 2007, KINNEY deposited the official check ending in

"824-0" in the amount of $48,730.03 into his attorney trust account at Wachovia

Bank ending in "6997," falsely representing it to be Borrower "R.G.'s down

payment in the 25 West Coit Street, New London transaction, when in truth and in

fact the funds had not been provided by Athan.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO THROUGH THIRTY-ONE
## MAIL FRAUD
## (18 U.S.C. §§ 1341 and 2)

48.     The allegations in Paragraphs 1 through 26 of Count 1 of this Indictment are realleged and incorporated by reference as though set out in full in these counts.

49.     The allegations in Paragraphs 28 through 47 of Count 1 of this Indictment are realleged and incorporated by reference as though set out in full in these counts as describing the scheme and artifice to defraud and to obtain money and property.

50.     Beginning in or about January 2004 and continuing until in or about June 2007, in the District of Connecticut, and elsewhere, the defendants charged in these counts and others, known and unknown to the Grand Jury, willfully and with intent to defraud, devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, which scheme is described in Paragraphs 28 through 47 of Count 1 of this Indictment and for the purposes of executing such scheme and artifice, did knowingly cause to be delivered by United States Mail and commercial interstate carrier according to the directions thereon, packages containing residential real estate mortgage documents and closing documents addressed to various Lenders.

51.     On or about the dates set forth for each count below, in the District of Connecticut and elsewhere, for the purpose of executing and attempting to execute the aforementioned scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises as described above, the defendant(s) listed for each count did knowingly cause to be deposited items to be sent and delivered by private and

- 30 -

commercial interstate carriers according to the directions thereon each item delivered and caused

to be delivered constituting a separate count of this Indictment:

| Count | Defendant(s) | Date | Origin | Destination | Description |
|-------|-------------|------|--------|-------------|-------------|
| 2 | LANCIA RUSSO | 6/2/05 | Attorney #2 Law Offices at **Redacted** | Argent Mortgage, 333 Westchester Ave., 1st Floor, White Plains, NY 10604 | UPS letter containing closing documents re: a real estate transaction for the property located at 33 Lee Ave., New London (Borrower "M.V.") |
| 3 | LANCIA RUSSO | 8/17/05 | Attorney #2 Law Offices at **Redacted** | Argent Mortgage, 333 Westchester Ave., 1st Floor, White Plains, NY 10604 | UPS letter containing closing documents re: a real estate transaction for the property located at 121 Hempstead Rd., New London (Borrower "M.V.") |
| 4 | LANCIA RUSSO VALENTIN | 8/19/05 | Attorney #2 Law Offices at **Redacted** | Accredited Home Lenders, 475 Kilvert St., Ste 300, Warwick, RI 07886 | UPS letter containing closing documents re: a real estate transaction for the property located at 193 Summit St., Norwich (VALENTIN) |
| 5 | LANCIA RUSSO VALENTIN | 8/29/05 | Attorney #2 Law Offices at **Redacted** | Argent Mortgage, 333 Westchester Ave., 1st Floor, White Plains, NY 10604 | UPS letter containing closing documents re: a real estate transaction for the property located at 44 Garfield Ave., New London (Isaura Guzman) |

| Count | Defendant(s) | Date | Origin | Destination | Description |
|-------|-------------|------|--------|-------------|-------------|
| 6 | LANCIA RUSSO VALENTIN | 2/8/06 | Attorney #2 Law Offices at **Redacted** | Argent Mortgage, 333 Westchester Ave., 1st Floor, White Plains, NY 10604 | UPS letter containing closing documents re: a real estate transaction for the property located at 483 East Main St., New London (Borrower "E.V.") |
| 7 | LANCIA RUSSO VALENTIN LOGAN | 4/11/06 | Attorney #2 Law Offices at **Redacted** | The New York Mortgage Company LLC, 1125 Route 22 West, 2nd Floor, Bridgewater, NJ 08807 | UPS letter containing closing documents re: a real estate transaction for the property located at 93 Lincoln Ave., New London (LOGAN) |
| 8 | LANCIA RUSSO VALENTIN HODGES LOGAN | 5/4/06 | KINNEY's Law Offices at 685 State St., New Haven, CT 06511 | America's Wholesale Lender (Countrywide), 2375 No. Glenville Dr., Richardson, TX 75082 | FedEx Pak containing closing documents re: a real estate transaction for the property located at 115 Riverview Ave., New London (Borrower "R.A.") |
| 9 | LANCIA KINNEY PETRO RUSSO GONZALEZ VALENTIN HODGES LOGAN | 6/16/06 | KINNEY's Law Offices at 685 State St., New Haven, CT 06511 | New Century Mortgage Corp., 11700 Plaza America Dr., Ste 200, Reston, VA. 20190 | FedEx Pak containing closing documents re: a real estate transaction for the property located at 34 Montauk Ave., New London (Borrower "I.G.") |

| Count | Defendant(s) | Date | Origin | Destination | Description |
|-------|--------------|------|--------|-------------|-------------|
| 10 | LANCIA<br>KINNEY<br>PETRO<br>RUSSO<br>GONZALEZ<br>VALENTIN<br>HODGES<br>SOULLIERE<br>LOGAN | 6/30/06 | KINNEY's Law Offices at 685 State St., New Haven, CT 06511 | New Century Mortgage Corp., 11700 Plaza America Dr., Ste 200, Reston, VA 20190 | FedEx Pak containing closing documents re: a real estate transaction for the property located at 47 Blackhall St., New London (VALENTIN) |
| 11 | LANCIA<br>KINNEY<br>PETRO<br>RUSSO<br>GONZALEZ<br>VALENTIN<br>HODGES<br>SOULLIERE<br>LOGAN | 6/30/06 | KINNEY's Law Offices at 685 State St., New Haven, CT 06511 | New Century Mortgage Corp., 11700 Plaza America Dr., Ste 200, Reston, VA 20190 | FedEx Pak containing closing documents re: a real estate transaction for the property located at 206 Jefferson Ave., New London (SOULLIERE) |
| 12 | LANCIA<br>KINNEY<br>PETRO<br>RUSSO<br>GONZALEZ<br>VALENTIN<br>HODGES<br>SOULLIERE<br>LOGAN | 8/21/06 | KINNEY's Law Offices at 685 State St., New Haven, CT 06511 | New Century Mortgage Corp., 11700 Plaza America Dr., Ste 200, Reston, VA 20190 | FedEx Pak containing closing documents re: a real estate transaction for the property located at 47 Blackhall St., New London (LOGAN) |
| 13 | LANCIA<br>KINNEY<br>PETRO<br>RUSSO<br>GONZALEZ<br>VALENTIN<br>HODGES<br>SOULLIERE<br>LOGAN | 8/25/06 | KINNEY's Law Offices at 685 State St., New Haven, CT 06511 | New Century Mortgage Corp., 11700 Plaza America Dr., Ste 200, Reston, VA 20190 | FedEx Pak containing closing documents re: a real estate transaction for the property located at 51-53 Mountain Ave., New London (VALENTIN) |

| Count | Defendant(s) | Date | Origin | Destination | Description |
|-------|-------------|------|--------|-------------|-------------|
| 14 | LANCIA KINNEY PETRO RUSSO GONZALEZ VALENTIN HODGES SOULLIERE LOGAN | 9/29/06 | KINNEY's Law Offices at 685 State St., New Haven, CT 06511 | Freemont Investment & Loan, 1401 Willow Pass Rd., Concorde, CA 94520 | FedEx Pak containing closing documents re: a real estate transaction for the property located at 29 Division St., New London (LOGAN) |
| 15 | LANCIA KINNEY PETRO RUSSO GONZALEZ VALENTIN HODGES SOULLIERE LOGAN | 10/2/06 | KINNEY's Law Offices at 685 State St., New Haven, CT 06511 | Accredited Home Lenders, 171 Service Rd., Ste 400, Warwick, RI 02886 | FedEx Pak containing closing documents re: a real estate transaction for the property located at 278 Harland Rd., Norwich (Borrower "C.Q.") |
| 16 | LANCIA KINNEY PETRO RUSSO GONZALEZ VALENTIN HODGES SOULLIERE LOGAN | 10/26/06 | KINNEY's Law Offices at 685 State St., New Haven, CT 06511 | New Century Mortgage Corp., 11700 Plaza America Dr., Ste 200, Reston, VA 20190 | FedEx Pak containing closing documents re: a real estate transaction for the property located at 18 Hope St., New London (Borrower "C.Q.") |
| 17 | LANCIA KINNEY PETRO RUSSO GONZALEZ VALENTIN HODGES SOULLIERE LOGAN | 11/17/06 | KINNEY's Law Offices at 685 State St., New Haven, CT 06511 | New Century Mortgage Corp., 11700 Plaza America Dr., Ste 200, Reston, VA 20190 | FedEx Pak containing closing documents re: a real estate transaction for the property located at 18 Mountain Ave., New London (Borrower "C.Q.") |

| Count | Defendant(s) | Date | Origin | Destination | Description |
|-------|--------------|------|--------|-------------|-------------|
| 18 | LANCIA KINNEY PETRO RUSSO GONZALEZ VALENTIN HODGES SOULLIERE LOGAN | 11/17/06 | KINNEY's Law Offices at 685 State St., New Haven, CT 06511 | New Century Mortgage Corp., 11700 Plaza America Dr., Ste 200, Reston, VA 20190 | FedEx Pak containing closing documents re: a real estate transaction for the property located at 54 Hempstead Ave., New London (Borrower "C.Q.") |
| 19 | LANCIA KINNEY PETRO RUSSO GONZALEZ VALENTIN HODGES SOULLIERE LOGAN | 11/29/06 | KINNEY's Law Offices at 685 State St., New Haven, CT 06511 | New Century Mortgage Corp., 11700 Plaza America Dr., Ste 200, Reston, VA 20190 | FedEx Pak containing closing documents re: a real estate transaction for the property located at 309 Broad St., New London (Borrower "C.Q.") |
| 20 | LANCIA KINNEY PETRO RUSSO GONZALEZ VALENTIN HODGES SOULLIERE LOGAN | 12/01/06 | KINNEY's Law Offices at 685 State St., New Haven, CT 06511 | Nation One Mortgage Co., 700 Longwater Dr., Norwell, MA 02061 | FedEx Pak containing closing documents re: a real estate transaction for the property located at 39 Summer St., New London (Borrower "D.C.") |
| 21 | LANCIA KINNEY PETRO RUSSO GONZALEZ VALENTIN HODGES SOULLIERE LOGAN | 12/1/06 | KINNEY's Law Offices at 685 State St., New Haven, CT 06511 | Accredited Home Lenders, 171 Service Rd., Ste 400, Warwick, RI 02886 | FedEx Pak containing closing documents re: a real estate transaction for the property located at 852 Bank St., New London (Borrower "R.R.") |

| Count | Defendant(s) | Date | Origin | Destination | Description |
|-------|-------------|------|--------|-------------|-------------|
| 22 | LANCIA KINNEY PETRO RUSSO GONZALEZ VALENTIN HODGES SOULLIERE LOGAN | 12/13/06 | KINNEY's Law Offices at 685 State St., New Haven, CT 06511 | New Century Mortgage Corp., 11700 Plaza America Dr., Ste 200, Reston, VA 20190 | FedEx Pak containing closing documents re: a real estate transaction for the property located at 49 Lower Blvd., New London (Borrower "R.R.") |
| 23 | LANCIA KINNEY PETRO RUSSO GONZALEZ VALENTIN HODGES SOULLIERE LOGAN | 12/14/06 | KINNEY's Law Offices at 685 State St., New Haven, CT 06511 | Wilmington Finance, Inc., 10 Rod Rd., No. Kingstown, RI 02852 | FedEx Pak containing closing documents re: a real estate transaction for the property located at 2 Hayes St., Waterford (Borrower "R.R.") |
| 24 | LANCIA KINNEY PETRO RUSSO GONZALEZ VALENTIN HODGES SOULLIERE LOGAN | 12/21/06 | KINNEY's Law Offices at 685 State St., New Haven, CT 06511 | New Century Mortgage Corp., 11700 Plaza America Dr., Ste 200, Reston, VA 20190 | FedEx Pak containing closing documents re: a real estate transaction for the property located at 44 Garfield Ave., New London (Borrower "M.C.") |
| 25 | LANCIA KINNEY PETRO RUSSO GONZALEZ VALENTIN HODGES SOULLIERE URENA LOGAN | 1/12/07 | KINNEY's Law Offices at 685 State St., New Haven, CT 06511 | New Century Mortgage Corp., 11700 Plaza America Dr., Ste 200, Reston, VA 20190 | FedEx Pak containing closing documents re: a real estate transaction for the property located at 51-53 Mountain Ave., New London (URENA) |

| Count | Defendant(s) | Date | Origin | Destination | Description |
|-------|-------------|------|--------|-------------|-------------|
| 26 | LANCIA KINNEY PETRO RUSSO GONZALEZ VALENTIN HODGES SOULLIERE URENA LOGAN | 2/5/07 | KINNEY's Law Offices at 685 State St., New Haven, CT 06511 | New Century Mortgage Corp., 11700 Plaza America Dr., Ste 200, Reston, VA 20190 | FedEx Pak containing closing documents re: a real estate transaction for the property located at 59 Coit St., New London (URENA) |
| 27 | LANCIA KINNEY PETRO RUSSO GONZALEZ VALENTIN HODGES SOULLIERE URENA LOGAN | 2/26/07 | KINNEY's Law Offices at 685 State St., New Haven, CT 06511 | New Century Mortgage Corp., 11700 Plaza America Dr., Ste 200, Reston, VA 20190 | FedEx Pak containing closing documents re: a real estate transaction for the property located at 31 Grand St., New London (Borrower "B.G.") |
| 28 | LANCIA KINNEY PETRO RUSSO GONZALEZ VALENTIN HODGES SOULLIERE URENA LOGAN | 3/28/07 | KINNEY's Law Offices at 685 State St., New Haven, CT 06511 | Option One Mortgage Corp., 950 Warren Ave., Ste 100, E. Providence, RI 02914 | FedEx Pak containing closing documents re: a real estate transaction for the property located at 38 Coit St., New London (Athan) |
| 29 | LANCIA KINNEY PETRO RUSSO GONZALEZ VALENTIN HODGES SOULLIERE URENA LOGAN | 4/2/07 | KINNEY's Law Offices at 685 State St., New Haven, CT 06511 | Option One Mortgage Corp., 950 Warren Ave., Ste 100, E. Providence, RI 02914 | FedEx Pak containing closing documents re: a real estate transaction for the property located at 33-35 Prest St., New London (Athan) |

| Count | Defendant(s) | Date | Origin | Destination | Description |
|-------|--------------|------|--------|-------------|-------------|
| 30 | LANCIA KINNEY PETRO RUSSO GONZALEZ VALENTIN HODGES SOULLIERE URENA LOGAN | 4/10/07 | KINNEY's Law Offices at 685 State St., New Haven, CT 06511 | America's Wholesale Lender (Countrywide), 2 Batterson Park Rd., Farmington, CT 06032 | FedEx Pak containing closing documents re: a real estate transaction for the property located at 99 Furnance St., Killingly (URENA) |
| 31 | LANCIA KINNEY PETRO RUSSO GONZALEZ VALENTIN HODGES SOULLIERE URENA LOGAN | 4/17/07 | KINNEY's Law Offices at 685 State St., New Haven, CT 06511 | Option One Mortgage Corp., 950 Warren Ave., Ste 100, E. Providence, RI 02914 | FedEx Pak containing closing documents re: a real estate transaction for the property located at 15 Rosemary St., New London (Borrower "B.G.") |
| 32 | LANCIA KINNEY PETRO RUSSO GONZALEZ VALENTIN HODGES SOULLIERE URENA LOGAN | 5/1/07 | KINNEY's Law Offices at 685 State St., New Haven, CT 06511 | BNC Mortgage, Inc., 1055 Westlakes Dr., 3rd Floor Berwyn, PA 19312 | FedEx Pak containing closing documents re: a real estate transaction for the property located at 25 West Coit St., New London (Borrower "R.G.") |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNTS THIRTY-THREE THROUGH THIRTY-SIX
### WIRE FRAUD
### (18 U.S.C. §§ 1343 and 2)

52.     The allegations in Paragraphs 1 through 26 of Count 1of this Indictment are realleged and incorporated by reference as though set out in full in these counts.

53.     The allegations in Paragraphs 28 through 47 of Count 1 of this Indictment are realleged and incorporated by reference as though set out in full in these counts as describing the scheme and artifice to defraud and to obtain money and property.

54.     Beginning in or about January 2004, and continuing until in or about June 2007, in the District of Connecticut, and elsewhere, the defendants charged in these counts and others, known and unknown to the Grand Jury, willfully and with intent to defraud, devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, which scheme is described in Paragraphs 28 through 47 of Count 1of this Indictment and for the purposes of executing such scheme and artifice, did knowingly transmit, and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals and sounds.

55.     On or about the dates set forth for each count below, in the District of Connecticut and elsewhere, for the purpose of executing and attempting to execute the aforementioned scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises as described above, the defendant(s) listed for each count did knowingly transmit, and cause to be transmitted, by means of wire

- 39 -

communication in interstate and foreign commerce, certain writings, signs, signals and sounds,

each wiring as set forth below constituting a separate count of this Indictment:

| Count | Defendant(s) | Date | From | To | Description |
|-------|--------------|------|------|-----|-------------|
| 33 | LANCIA RUSSO GONZALEZ VALENTIN | 2/17/06 | Bank Account of WMC Mortgage Corp. Burbank, CA, Account via Bank of New York City | Attorney trust account of Attorney #2 at Liberty Bank account ending in "8553" | Wire transfer in the amount of $201,209.05 for the purchase of 10 Thompson Ct., New London |
| 34 | LANCIA KINNEY RUSSO GONZALEZ VALENTIN HODGES | 3/27/07 | Bank Account of Option One Mortgage Group, Irvine, CA, via Mellon Bank, Pittsburgh, PA | Attorney trust account of KINNEY at Wachovia Bank account ending in "6997" | Wire transfer in the amount of $269,440.70 for the purchase of 38 Coit St., New London |
| 35 | LANCIA KINNEY RUSSO GONZALEZ VALENTIN HODGES | 3/27/07 | Bank Account of Option One Mortgage Group, Irvine, CA, via Mellon Bank, Pittsburgh, PA | Attorney trust account of KINNEY at Wachovia Bank account ending in "6997" | Wire transfer in the amount of $251,101.95 for the purchase of 33-35 Prest St., New London |
| 36 | LANCIA KINNEY RUSSO GONZALEZ VALENTIN HODGES | 4/30/07 | Bank Account of BNC Mortgage Inc., Wilmington, DE via Lehman Brothers Bank, FSB | Attorney trust account of KINNEY at Wachovia Bank account ending in "6997" | Wire transfer in the amount of $246,025.35 for the purchase of 25 W. Coit St., New London |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT THIRTY-SEVEN
## MAKING A MATERIAL FALSE STATEMENT
## (18 U.S.C. § 1001)

56.     The allegations in Paragraphs 1 through 26 and Paragraphs 28 through 47 of

Count 1 of this Indictment are realleged and incorporated by reference as though set out in full in

this count.

57.     On or about November 5, 2007, two Special Agents of the Department of Justice,

Federal Bureau of Investigation went to KINNEY's office at 685 State Street in New Haven,

Connecticut, in order to serve him with a subpoena, and KINNEY made statements to them.

58.     On or about November 5, 2007, in the District of Connecticut, in a matter within

the jurisdiction of the Department of Justice, Federal Bureau of Investigation, an agency of the

United States,

DAVID KINNEY,

the defendant herein, did knowingly and willfully make a false, fictitious, and fraudulent material

statement and representation, that is, he told the two FBI Special Agents that he never gave

anyone a closing check prior to receiving the down payment money and reiterated this by telling

the FBI Special Agents that he would never give anyone a check unless he had all the down

payment money first.  KINNEY knew this to be false because, in truth and in fact, as he well

knew, he had, on multiple occasions, given individuals closing checks prior to receiving down

payment money.

All in violation of Title 18, United States Code, Section 1001.

- 41 -

## COUNT THIRTY-EIGHT
## MAKING A MATERIAL FALSE STATEMENT
## (18 U.S.C. § 1001)

59.     The allegations in Paragraphs 1 through 26 and Paragraphs 28 through 47 of Count 1 of this Indictment are realleged and incorporated by reference as though set out in full in this count.

60.     On or about February 27, 2009, a Special Agent of the Department of Justice, Federal Bureau of Investigation went to GONZALEZ's office at 349-351 Broad Street New London, Connecticut in order to speak with GONZALEZ. The Special Agent showed GONZALEZ a copy of an employment verification letter for Borrower "J.G. Jr." written on the letterhead of IEK Professional Services.

61.     On or about February 27, 2009, in the District of Connecticut, in a matter within the jurisdiction of the Department of Justice, Federal Bureau of Investigation, an agency of the United States,

YUNIO GONZALEZ,

the defendant herein, did knowingly and willfully make a false, fictitious, and fraudulent material statement and representation, that is, he told the FBI Special Agent that he did not prepare the above referenced letter. GONZALEZ knew this to be false because, in truth and in fact, as he well knew, he had prepared the letter at the request of Jose Guzman.

All in violation of Title 18, United States Code, Section 1001.

- 42 -

<u>FORFEITURE ALLEGATION UNDER 28 U.S.C. § 2461(c) AND 18 U.S.C. § 981(a)</u>

(Fraud Conspiracy)

Upon conviction of the offense alleged in Count 1 of this Indictment,

MAURIZIO LANCIA
DAVID KINNEY
STACEY PETRO
MICHAEL RUSSO
YUNIO GONZALES
MELISSA VALENTIN
MICHAEL HODGES
JANE SOULLIERE
ANGEL URENA
MARIA LOGAN

the defendants herein, shall forfeit to the United States of America pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all right, title, and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. §§ 1341 and 1343, and a sum of money equal to the total amount of proceeds obtained as a result of the offense.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant, cannot be located upon the exercise of due diligence, has been transferred, sold to, or deposited with a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

All in accordance with Title 18, United States Code, Section 981(a)(1) as incorporated by Title

28, United States Code, Section § 2461(c), and Rule 32.2(a), Federal Rules of Criminal

Procedure.

A TRUE BILL

/s/

FOREPERSON

DAVID B. FEIN
UNITED STATES ATTORNEY

PETER S. JONGBLOED
CHIEF, CRIMINAL DIVISION

MICHAEL S. McGARRY
ASSISTANT UNITED STATES ATTORNEY

- 44 -